## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | **No. 11-20085-01-KHV** |
| v. | ) | |
| | ) | **CIVIL ACTION** |
| RODNEY MCINTOSH, | ) | **No. 15-2909-KHV** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On June 18, 2013, the Court sentenced defendant to 144 months in prison.  This matter is

before the Court on defendant's <u>Motion To Vacate, Set Aside, Or Correct Brought Under Title 28</u>

<u>U.S.C. § 2255</u> (Doc. #198) filed April 6, 2015 and numerous related motions.  For reasons stated

below, the Court overrules defendant's Section 2255 motion and denies a certificate of appealability.

### Factual Background

On October 6, 2011, a grand jury charged Rodney McIntosh with nine counts of forcible

assault against Bureau of Prisons ("BOP") employees in violation of 18 U.S.C. § 111(a)(1).  <u>See</u>

<u>Indictment</u> (Doc. #1).  Each count pertained to different incidents involving various BOP

employees.[1]

---

[1]    For example, Count 2 charged as follows:

On or about May 13, 2011, in the District of Kansas, the defendant, RODNEY
MCINTOSH, did forcibly assault Earl Genter, a Senior Officer Specialist for the
Bureau of Prisons, and engage in acts involving physical contact with Earl Genter
while he was engaged in his official duties.  This is in violation of Title 18, United
States Code, Section 111(a)(1).

<u>Indictment</u> (Doc. #1).  Except for the dates and victim names, the other eight counts included
identical language.  <u>See</u> <u>id.</u>

In a pretrial motion to dismiss, defendant claimed that the government destroyed material exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).  See Motion To Dismiss (Doc. #35) filed June 7, 2012.  On June 26, 2012, the Honorable Beth Phillips of the United States District Court for the Western District of Missouri, sitting by designation, overruled the motion.  See Transcript Of Motions Hearing (Doc. #190) at 9.  Judge Phillips found that (1) the exculpatory value of the evidence was not apparent and (2) to the extent that the evidence was potentially useful, defendant had presented no evidence that the government acted in bad faith.  See id.

The following is a summary of the evidence at trial as to each count:

Count One: On October 27, 2010, Fred Messina, a corrections officer with the United States Penitentiary in Leavenworth, Kansas, was performing a routine cell check of defendant's cell.  Officer Messina testified that he informed defendant that he was going to do a "quick cell search;" defendant replied "okay" and stepped out of the cell.  As Officer Messina was conducting a search of the cell, he heard a noise behind him and saw defendant standing in the doorway watching him.  Officer Messina told him that he needed to go out of eyesight of what he was doing so he could finish the search.  Defendant responded "fuck you, I'm not going anywhere, you're going to steal my stuff."  Officer Messina then exited the cell, at which point a physical altercation occurred.  Officer Messina stated that while the verbal confrontation continued, defendant had his hands balled up in a fist and at one point "came at me."  As the two began to wrestle, another officer, Frank Ketchum, showed up to assist Officer Messina.  Once officers restrained defendant, they took him to the Special Housing Unit (SHU).

Count Two: On May 13, 2011, Earl Genter, a corrections officer, was on duty in the SHU where defendant was being housed.  Officer Genter testified that during a safety and security check of the unit the defendant threw a liquid that "was yellowish in color and it smelled like urine" underneath the cell door, hitting Officer Genter in the lower leg.  Defendant then began to scream, "I got you motherfucker, I got you, I told you I would get you[.]"  Officer Genter stated that he was "[a]bsolutely offended . . . and disgusted" by having the liquid thrown on him because "this how diseases get spread in prison."  Genter did not collect the clothing for the purpose of trying to forensically identify the liquid because "that's not something that's done for urine."

<u>Count Three</u>: On May 16, 2011, Officer Genter was again on duty in the SHU. During shift briefing it was reported that defendant had taken control of the feeding slot to his cell by sticking his arm through the slot and holding a clear bottle in his hand that he claimed contained urine and feces. Officer Genter personally observed defendant holding these items; defendant claimed the bottle contained urine and feces and told the officers, "[I]f you come down here, I'm going to get you, motherfucker." Defendant threatened to squirt the contents on staff members. The conflict continued for approximately two hours until the incident was resolved by the calculated-use-of-force team. Joseph Wilson, a unit case manager, testified that he was part of the calculated-use-of-force team that was called to assist in the incident involving defendant. He testified that he was assigned the number 1 man, meaning he was the first to enter the cell. Defendant ran at the team as they entered his cell and tried to kick Wilson as the door was opening. As Wilson was attempting to secure defendant so he could be placed in restraints, defendant spit on him numerous times, hitting him in the neck, hands and chest, and making several threatening comments to him. The spit landed on his shoulders, face shield, and the bare skin on the right side of his neck. As Wilson was securing defendant, defendant commented, while he continued to spit on Wilson, that he was going to find his house on the internet, kill Wilson, and sexually assault his family members. After several minutes the team was able to place defendant in restraints and remove him from the cell. Wilson testified that he injured his shoulder during the incident, underwent several physical therapy sessions, and received two injections in his shoulder for a bruised bone and small tear in his tissue.

<u>Count Four</u>: On July 26, 2011, Corrections Officer Amy Holmes was on duty in the SHU. Officer Holmes testified that she had called other staff members to the unit because defendant was not responding to her safety and security check. Upon receiving no response from defendant, Officer Holmes and two other staff members entered the cell to check on defendant's welfare. When they entered the cell, defendant started yelling obscenities and threatening them. After determining that defendant was okay, they started to exit the cell, at which time defendant threw a milk carton containing a liquid, splashing the shield on Officer Holmes's left arm. Officer Holmes could not identify the liquid, but she testified that she found this contact "very offensive."

<u>Count Five</u>: On August 15, 2011, Lieutenant Michael Newell testified he was advised by another officer that defendant had broken his cell door windows. Lieutenant Newell and Officer Michael Kobulnicky reported to the SHU to check the damage to the window. As Newell was photographing the broken cell window defendant squirted a liquid from a container, splashing Newell on his mouth, right eye and upper right torso. Around the time this occurred, defendant stated, "I told you I was going to get you, you motherfucker." Officer Kobulnicky testified that he was with Lieutenant Newell as he was photographing the window to defendant's cell when defendant threw a liquid substance striking Officer Kobulnicky on the upper

right side of his body.  Photographs of Officer Kobulnicky were taken after the incident showing spots on his shirt from where the liquid had hit him.

Count Six: On August 16, 2011, Lieutenant Newell was again on duty in the SHU. Defendant that day was in restraints and Lieutenant Newell was performing the two-hour restraint check, along with Officer Kobulnicky.  When Lieutenant Newell opened the outer cell door and walked into the inner grill, defendant stated, "[D]on't come in here."  Immediately after making this statement, defendant threw a plastic bag containing urine in his direction; the bag burst open and its contents struck Lieutenant Newell in the face, upper body, and pants, making contact with his bare skin.  He surmised the liquid was urine by its strong smell.  Officer Kobulnicky testified similarly about this incident.

Counts Seven, Eight, & Nine: On August 18, 2011, Officer Gregory Sawyer was on duty in the SHU.  He had been asked by the lieutenant to assist with a two-hour restraint check.  Upon completing the check, Officer Sawyer was locking the inner grill door when defendant came up to the bars with his pants around his ankles and began to urinate on Officer Sawyer's right leg and shoe.  It was determined that a calculated use of force be used on defendant due to the incident that had happened earlier and on previous days.  Defendant had already been placed in ambulatory restraints and was still assaulting staff members.  Lieutenant Newell, who was a part of the calculated-use-of-force team that day, testified that the desired effects of the ambulatory restraints were unsuccessful, so a calculated use of force was being used to restrain him to his bed.  Defendant complied with the orders of the force team to lie face up on his bed so that they could secure him with restraints to the bed; however, during the process defendant was calling the staff member obscenities and threatening to spit "lugies" on them.  Lieutenant Newell checked the restraints to make sure they were safely secured; as he was checking one of the hand restraints, defendant was able to maneuver his hand in a way that he was able to grab onto Lieutenant Newell's fingers and twist them.  As the use-of-force team exited the cell, defendant spit at one of the team members, Keith Thomas, striking the shield and his leg and foot area.

After a seven-day trial, a jury found defendant not guilty on Count 1 and guilty on Counts 2 through 9.  Shortly after trial, defendant filed several pro se motions and asked the Court to appoint new counsel.  On February 13, 2013, defendant withdrew his request for new counsel.  In March of 2013, the Court sustained defendant's request to proceed pro se.  Subsequently, the Court overruled some 40 pro se post-trial defense motions.

On June 18, 2013, defendant proceeded pro se at sentencing.  Defendant's total offense level

was 20, with a criminal history category VI, resulting in a guideline range of 70 to 87 months in prison.   The statutory penalty under each count did not include a minimum term but included a maximum term of eight years in prison.  See 18 U.S.C. § 111(a)(1).  The Court sentenced defendant to a total term of 144 months in prison.[2]  The Court found that a variance was appropriate because (1) not all counts of conviction resulted in an increase in the applicable guideline range, (2) the instant offenses were egregious in nature, in that (among other things) defendant threw bodily fluids on prison guards and told at least one victim that he would sexually assault members of the victim's family, (3) after trial, defendant continued his assaultive and disruptive conduct toward correctional officers at Corrections Corporation of America, (4) defendant had an extensive criminal history, including five prior felony convictions – three of which involved weapons and (5) defendant had not accepted responsibility for any of his criminal conduct.  See Statement of Reasons (Doc. #174) at 3.

Defendant appealed.  On appeal, defendant argued that the Court erred in overruling his motion to dismiss and that his sentence was procedurally and substantively unreasonable.  On July 30, 2014, the Tenth Circuit affirmed.  See United States v. McIntosh, 573 F. App'x 760 (10th Cir. 2014).  On December 8, 2014, the Supreme Court denied defendant's petition for a writ of certiorari.  See United States v. McIntosh, 135 S. Ct. 768 (2014).

Before defendant ultimately proceeded pro se, three different attorneys represented him in the district court proceedings: Kirk C. Redmond (from initial hearing on October 25, 2011 through March 21, 2012), James L. Spies (March 21 through August 20, 2012), and Gregory C. Robinson

---

[2]   The term of imprisonment consisted of 96 months on each of Counts 2 through 8, to be served concurrently, and 96 months on Count 9, of which 48 months to be served consecutively to the other counts and 48 months to be served concurrently to the other counts.

(August 20, 2012 through April 16, 2013).  Rick E. Bailey represented defendant on appeal.

On February 23, 2015, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255.  Liberally construed and read in light of defendant's 37 related filings,[3] defendant's motion to vacate alleges that the Court lacked jurisdiction because the government (1) did not file a complaint under Rule 3, Fed. R. Crim. P., and (2) did not obtain a writ of habeas corpus ad prosequendum to remove him from BOP custody.  See Motion To Vacate (Doc. #198) at 2, 4, 46-48. Defendant also asserts that the Court erred because it (3) overruled his motion to dismiss based on destruction of evidence, (4) allowed the government to use a peremptory challenge to strike the only African-American member of the venire, (5) allowed lay witnesses to give expert testimony, (6) did not correctly instruct the jury, (7) did not correctly calculate his criminal history and (8) sentenced him above the statutory maximum term of imprisonment.  See id. at 7-19, 24-26, 28-31, 38-45.

Defendant alleges that Robinson provided ineffective assistance because he (1) "guaranteed" that a jury would acquit defendant on all charges, (2) failed to challenge the government's use of a peremptory challenge to the only African-American member of the venire, (3) failed to subject the government case to meaningful adversarial testing, and (4) failed to challenge the government's unauthenticated evidence under Rule 901 of the Federal Rules of Evidence.  See id. at 3, 30-31, 51-52.

---

[3]       The Court has considered all of defendant's related filings which are at docket entry numbers 199-202, 204-09, 211, 213-14, 216-20, 222-26 and 228-41.  Defendant seeks "equitable tolling" to file a reply brief.  Doc. #220 at 5.  On January 11, 2016, the Court granted defendant leave to file a supplemental reply by February 26, 2016.  See Memorandum And Order (Doc. #221) at 3.  The Court has considered all of defendant's filings up to and including his [Motion For] Writ Of Habeas Corpus Ad Subjiciendum (Doc. #241) filed June 24, 2016 as supplemental memoranda in support of his motion to vacate.  The Court therefore overrules as moot defendant's request for equitable tolling.

Defendant argues that on appeal, Bailey provided ineffective assistance because he did not argue that (1) the indictment did not allege that the claimed assault was "intentional," (2) the district court erred in denying his motion to dismiss based on destruction of evidence, (3) the district court lacked jurisdiction because the government did not file a complaint or obtain a writ of habeas corpus ad prosequendum, (4) the district court erroneously allowed the government to strike the only African-American member of the venire, (5) the district court admitted statements which he made while in custody and cuffed in his cell, (6) the jury instructions were erroneous and constituted a constructive amendment of the indictment, (7) the evidence was insufficient to sustain his convictions, (8) the district court did not correctly calculate his criminal history score, (9) the sentence was unreasonable, and (10) the judgment was invalid. See id. at 4, 9, 12, 30-31; Addendum To Habeas Corpus Brought Under 28 U.S.C. § 2255 (Doc. #208) filed July 10, 2015 at 2-3.[4]

Defendant also asserts prosecutorial misconduct because in closing argument, government counsel (1) stated multiple times that in order to find defendant not guilty of the crimes charged, the jury would have to find a conspiracy among all of the witnesses and (2) stated that under policy, the Bureau of Prisons ("BOP") was not required to test everything including urine-soaked clothing. See Motion To Vacate (Doc. #198) at 22, 31-36, 49-50.

## Analysis

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States,

---

[4]     Defendant attached a letter which identifies a number of issues that he asked counsel to raise on appeal. See Attachment to Addendum To Habeas Corpus Brought Under 28 U.S.C. § 2255 (Doc. #208). The Court has included each of the issues identified in the letter as a separate ground for relief.

880 F.2d 250, 253 (10th Cir. 1989).

**I.      Challenge To District Court Rulings (Claims 1-8)**

Defendant asserts that the Court erroneously ruled on a number of pretrial, trial and sentencing issues. Such claims are barred because defendant failed to raise them on direct appeal. See United States' Consolidated Response To Defendant's Post-Conviction Motions (Doc. #215) filed November 12, 2015 at 10-11, 13, 14 n.3, 15 (asserting procedural bar to various claims). Section 2255 is not available to test the legality of matters which should have been raised on appeal. United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994) (citing United States v. Walling, 982 F.2d 447, 448 (10th Cir. 1992)); see United States v. Bolden, 472 F.3d 750, 751 (10th Cir. 2006) (Section 2255 petition not appropriate vehicle to raise issues that should have been raised on direct appeal).

Defendant is precluded from raising in a Section 2255 petition issues which were not raised on direct appeal unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claims are not addressed. Allen, 16 F.3d at 378. Defendant has not satisfied any of these exceptions.

Defendant does not allege cause for his procedural default.[5] Defendant also has not demonstrated "prejudice," i.e. that the alleged errors worked to his actual and substantial disadvantage, infecting his entire sentence with error of constitutional dimensions. United States v. Frady, 456 U.S. 152, 170 (1982). Finally, defendant has not satisfied the exception for a "fundamental miscarriage of justice." The Supreme Court has held that this exception applies only

---

[5]      As alternative theories, defendant has re-asserted several of the first eight claims that trial and appellate counsel provided ineffective assistance. In Sections II and III below, the Court addresses those alternative claims.

if one is actually innocent.  See Bousley v. United States, 523 U.S. 614, 623 (1998).  Defendant has

not shown that he is actually innocent of the charges or the elements which form the basis of his

offense level under the Sentencing Guidelines.  Therefore, he cannot establish that failure to review

his claims would result in a fundamental miscarriage of justice.  Based on this procedural bar, the

Court overrules defendant's eight claims which allege that the Court erroneously ruled on certain

issues.  In addition, for reasons stated below, defendant's eight claims which alleged judicial error

lack substantive merit.

### A.    Absence Of Complaint Filed Under Rule 3 (Claim 1)

Defendant argues that the Court lacked jurisdiction because the government did not file a

complaint.  The Court previously rejected a similar argument.  See Memorandum And Order

(Doc. #210) filed September 15, 2015 at 1.  A criminal case may be initiated by a complaint,

indictment or information.  See Fed. R. Crim. P. 3 and 7.  Here, a grand jury returned an indictment.

Therefore the government was not required to pursue the alternative means of a complaint.  See

Marrone v. United States, No. 5:04-0228, 2011 WL 6009984, at *5 (S.D. W.Va. Nov. 9, 2011);

United States v. McDowell, No. 09-20133-JWL, 2010 WL 5014445, at *3 (D. Kan. Dec. 3, 2010).

The Court overrules defendant's jurisdictional challenge based on the government's failure to file

a complaint.

### B.    Failure To Obtain Writ Of Habeas Corpus Ad Prosequendum (Claim 2)

Defendant claims that the government did not have authority to arrest and prosecute him

because it did not obtain a writ of habeas corpus ad prosquendum.  Again, the Court previously

rejected defendant's argument.  See Memorandum And Order (Doc. #210) at 1-3.  The government

was not required to obtain a writ of habeas corpus ad prosequendum because defendant was already

in federal custody.[6]  See United States v. Jones, 254 F. App'x 711, 715-16 (10th Cir. 2007) (Interstate Agreement on Detainers Act - IADA - does not apply to BOP inmate indicted for assault on correctional officers); United States v. Walling, 974 F.2d 140, 141 (10th Cir. 1992) (under IADA, federal government considered "single state").[7]

Defendant apparently argues that absent a writ of habeas corpus, his arrest was void. Defendant ignores the fact that a Deputy U.S. Marshal arrested him on a warrant.  See Warrant For Arrest (Doc. #2) filed October 6, 2011.[8] Because the grand jury had returned an indictment that was valid on its face, the Clerk properly issued the arrest warrant.  See Kaley v. United States, 134 S. Ct. 1090, 1097-98 (2014) (grand jury indictment valid on face conclusively determines existence of probable cause and requires issuance of arrest warrant without further inquiry); see also id. at 1098 (grand jury on its own may effect pre-trial restraint on person's liberty by finding probable cause to support criminal charge).  The Court therefore overrules defendant's jurisdictional challenge based on the validity of his arrest.

---

[6]     When the grand jury returned an indictment on October 6, 2011, defendant was at USP-Leavenworth on a prior sentence. On that same day, Magistrate Judge James P. O'Hara issued an order which required BOP officials to deliver defendant to the United States Marshal for the purpose of appearing in connection with this court proceeding.  See Order Of Detention Pending Trial (Doc. #6) filed October 25, 2011.

[7]     In contrast, a writ of habeas corpus ad prosequendum is used to secure presence of defendants in federal criminal cases who are in state custody.  See United States v. Mauro, 436 U.S. 340, 358 (1978); Gray v. Benson, 443 F. Supp. 1284, 1298 (D. Kan. 1978).

[8]     Defendant's "arrest" was somewhat atypical in that when the grand jury returned the indictment, he was already in federal custody serving a prison sentence. The "arrest" essentially involved Deputy U.S. Marshals taking defendant to court for his arraignment on the charges in the indictment.

### C.    Motion To Dismiss For Destruction Of Evidence (Claim 3)

Defendant argues that the Court erred when it overruled his motion to dismiss based on the government's destruction of exculpatory evidence.  See Motion To Vacate (Doc. #198) at 37-39. Defendant asserts that the government destruction of evidence also violated his rights under the confrontation clause.  See Addendum To Support Habeas Corpus (Doc. #199) filed April 27, 2015 at 1-4.  As noted above, Judge Phillips overruled defendant's pretrial motion to dismiss which raised the same issue.  See Transcript Of Motions Hearing (Doc. #190) at 9.  Judge Phillips found that (1) the exculpatory value of the evidence was not apparent and (2) to the extent that the evidence was potentially useful, defendant had presented no evidence that the government acted in bad faith. See id.

After trial, defendant filed a pro se motion to dismiss based on the government's alleged violation of Brady.  The Court again overruled defendant's motion.  On appeal, defendant again argued that the government violated Brady.  The Tenth Circuit overruled his claim as follows:

> We review for clear error "the district court's conclusion that the government did not destroy potentially exculpatory evidence." United States v. Bohl, 25 F.3d 904, 909 (10th Cir. 1994).  "The inquiry into allegations of prosecutorial bad faith presents a mixed question of fact and law in which the quintessential factual question of intent predominates." Id.
>
> A due process violation occurs when the government fails to preserve constitutionally material evidence.  California v. Trombetta, 467 U.S. 479, 488 (1984).  Under Trombetta, evidence is only constitutionally material when (1) its exculpatory value was "apparent before the evidence was destroyed" and (2) it is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489.  If the evidence is only "potentially useful," rather than exculpatory, the government only commits a due process violation when it destroys the evidence in bad faith.  Arizona v. Youngblood, 488 U.S. 51, 58 (1988).
>
> The parties dispute the probative value of the soiled clothing.  On the one hand, the government contends that the identity of the substance was irrelevant to the crimes charged for assault of a government employee.  See 18 U.S.C. § 111(a)(1).

According to the government, the nature of the substance as a bodily fluid is not a component of the offense. On the other hand, McIntosh argues that the crude nature of the substance was repeatedly emphasized by the government at trial to underscore the offensiveness of the physical contact.

To sustain a felony conviction under § 111(a)(1), the government was required to prove that McIntosh intentionally forcibly assaulted an on-duty government official through physical contact that would offend a reasonable person. United States v. Hathaway, 318 F.3d 1001, 1007-08 (10th Cir. 2003).

Regardless of what the substance later turned out to be, the act of throwing an unknown substance onto a BOP official clearly causes the offensive physical conduct outlined in the statute. Moreover, the victims testified that the substance smelled of bodily fluids, and they were subject to cross examination and their credibility was challenged. Thus, while we cannot definitively say, as the government suggests, that the identity of the substance was entirely irrelevant as an evidentiary matter, we are convinced that any evidentiary value of the officers' soiled clothing could not rise to a level that would exonerate McIntosh. That is, the evidence may have been "potentially useful," but it was not exculpatory. See Youngblood, 488 U.S. at 58. Since the evidence was not exculpatory, McIntosh must prove that BOP officials washed or otherwise "destroyed" the clothing in bad faith. See Bohl, 25 F.3d at 911 (identifying factors to consider in establishing whether evidence was destroyed in bad faith). Based on our independent review of the record, we see no evidence that prison personnel intentionally destroyed or tampered with the evidence. The government's innocent explanation that the clothing was not preserved as part of standard BOP procedures for disposing of biohazardous materials, not to mention the evidence's merely cumulative relevance at trial, demonstrates that there were no pernicious motives at play in the handling of this evidence. See id. at 911-13. If stretched, the most we could say is that the government was negligent in failing to preserve this evidence despite its potential usefulness—but negligence is not sufficient to establish bad faith. United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003).

In light of the standard of review, moreover, we certainly do not regard the district court's finding as clearly erroneous. We conclude there was no due process violation.

McIntosh, 573 F. App'x at 762-63.

Defendant argues that both this Court and the Tenth Circuit addressed his claim under the incorrect legal standard. In particular, defendant maintains that the good faith analysis under Trombetta and Youngblood does not apply to his claim of a Brady violation. See Motion To Vacate

(Doc. #198) at 38-39.  To establish a violation of the principles enunciated in <u>Brady</u>, defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to him and (3) the evidence was material to his defense.  <u>United States v. Wooten</u>, 377 F.3d 1134, 1142 (10th Cir. 2004); <u>United States v. Hughes</u>, 33 F.3d 1248, 1251 (10th Cir. 1994).  If the disputed evidence is no longer available, as in this case, <u>Brady</u> is not implicated.  <u>See</u> <u>United States v. Harry</u>, 816 F.3d 1268, 1276 (10th Cir. 2016).  Instead, the Court evaluates whether the government failure to preserve the evidence violated defendant's right to due process.  <u>See id.</u>  Accordingly, this Court and the Tenth Circuit correctly applied the due process tests in <u>Trombetta</u> and <u>Youngblood</u>.[9]  The Court overrules defendant's third claim for relief.

### D.    Government Use Of Peremptory Challenge (Claim 4)

Defendant asserts that in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), the Court allowed the government to use a peremptory challenge to strike the only African-American member of the venire.  The "Constitution forbids striking even a single prospective juror for a discriminatory purpose."  <u>Snyder v. Louisiana</u>, 552 U.S. 472, 478 (2008) (internal quotation marks omitted).  At trial, the government used a preemptory challenge to strike an African-American woman whose husband had once been a federal prisoner.  In considering a <u>Batson</u> challenge, the Court conducts a three-prong inquiry.  <u>See</u> <u>Foster v. Chatman</u>, 136 S. Ct. 1737, 1747 (May 23, 2016).  First, defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis

---

[9]        In <u>Trombetta</u>, the Supreme Court found that the due process clause requires the government to preserve "potentially exculpatory" evidence, <u>i.e.</u> evidence which might play a significant role in the suspect's defense.  467 U.S. at 489.  In <u>Youngblood</u>, the Supreme Court extended <u>Trombetta</u> and held that in cases where the exculpatory value of evidence was indeterminate and all that can be confirmed is that the evidence was "potentially useful" for the defense, defendant must show that the government acted in bad faith in destroying the evidence. 488 U.S. at 57-58.

for striking the juror in question; and third, in light of the parties' submissions, the court must determine whether defendant has shown purposeful discrimination. Id. (citing Snyder, 552 U.S. at 476-77).

The Batson procedure "presupposes . . . a timely objection to the challenges during voir dire." Haney v. Adams, 641 F.3d 1168, 1173 (9th Cir. 2011). Any attempt to strictly apply Batson is "difficult, if not impossible, to evaluate for the first time in post-conviction proceedings when no record is preserved." Id. at 1172; see United States v. Hall, No. 2:06-CR-00310-HDM, 2014 WL 31673, at *5 (D. Nev. Jan. 3, 2014). Because defendant did not raise any objection at trial to the government's use of its peremptory challenge, the Court overrules defendant's argument on collateral review.[10]

### E.    Expert Testimony (Claim 5)

Defendant argues that lay witnesses gave expert testimony, which allowed the government to circumvent expert witness disclosure requirements. See Motion To Vacate (Doc. #198) at 22-26 (citing Fed. R. Evid. 702). Under Rule 701, Fed. R. Evid., a lay witness may give testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Defendant apparently argues that certain government witnesses testified as experts by virtue of their job titles as Senior Officer Specialist, Education Specialist, Psychologist and Special Investigative Services. See Motion To Vacate (Doc. #198) at 26. The government did not call the

---

[10]     Below, the Court addresses trial counsel's failure to raise a Batson challenge. The analysis below shows that the government had a race-neutral justification to strike the juror in question and defendant has not presented evidence of purposeful discrimination. See infra text, Analysis, Part II. B.

witnesses as "expert witnesses."  The government only inquired into the title and experience of the witnesses as background, not to lay a foundation for expert testimony.  Each witness was a victim and testified to personal observations.  Accordingly, the government was not required to give prior notice of their testimony under Rule 702.[11]

Defendant specifically objects to testimony by Senior Officer Specialist Earl Genter that after the assault, prison policy required that he get an "injury assessment" at the medical unit.  Trial Transcript - Volume I (Doc. #187) at 315.  Genter provided this explanation based on his understanding of prison policy, not as an expert.  In any event, his testimony on the specific reason for obtaining an assessment was tangential to the factual question whether defendant had assaulted him.

Defendant also objects to testimony by Officer Genter that "most staff" are aware that an assault can result in some sort of suit in federal court.  Id. at 342.  Genter's testimony was not based on specialized experience, but apparently on his interaction with other staff members.  In any event, defendant does not explain how such testimony was prejudicial.  Defense counsel sought Officer Genter's testimony on the issue and it was favorable to defendant's theory that staff should have done a more thorough investigation and preserved all evidence.

Finally, defendant objects to the testimony of Mearl Blevins, Jr. about BOP "calculated use of force" techniques.  See Motion To Vacate (Doc. #198) at 26.  Blevins testified that based on his training and experience, each individual on the "calculated use of force" team was assigned a

---

[11]     Defendant also alleges that the government violated Rule 16 of the Federal Rules of Criminal Procedure and Rule 26 of the Federal Rules Of Civil Procedure.  See Motion To Vacate (Doc. #198) at 23.  Because defendant has not shown that any witness gave expert testimony within the meaning of Rule 702, he has not shown a violation of Rule 16 of the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 16(a)(1)(g) (disclosure of expert testimony to be used in government case in chief).  The Federal Rules of Civil Procedure do not apply in this criminal prosecution.

specific task.  <u>Trial Transcript - Volume III</u> (Doc. #189) at 842.  Blevins had personal experience as part of more than 200 "calculated use of force" teams.  <u>Id.</u> at 841.  Accordingly, his testimony was within the scope of Rule 701.

In sum, to the extent that any correctional officers gave opinions at trial, Rule 701 permitted such testimony.  The Court therefore overrules defendant's fifth claim.

**F.      Jury Instructions (Claim 6)**

Defendant argues that the jury instructions were erroneous because they (1) omitted the lesser-included offense of "simple assault," (2) omitted the requirement of "physical harm," (3) did not include the element of "forcible assault," (4) misled the jury about the significance of the government failure to conduct certain investigative techniques, and (5) misled the jury about how to resolve conflicting testimony.  <u>See</u> <u>Motion To Vacate</u> (Doc. #198) at 9-19.

**1.  <u>Omission Of Instruction On Offense Of Simple Assault</u>**

Defendant argues that the Court should have granted his request for an instruction of the lesser-included offense of "simple assault" under Section 111(a)(1).  <u>Motion To Vacate</u> (Doc. #198) at 14-15.  The indictment charged defendant with nine violations of 18 U.S.C. § 111(a)(1), which provides as follows:

**(a) In general**.--Whoever--

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit

another felony, be fined under this title or imprisoned not more than 8 years, or both.

**(b) Enhanced penalty**.--Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.[12]  Section 111 sets forth three separate offenses: (1) simple assault; (2) assault involving physical contact (previously referred to as "all other cases" assault); and (3) assault involving a deadly or dangerous weapon or inflicting bodily injury.  See United States v. Hathaway, 318 F.3d 1001, 1008-09 (10th Cir. 2003).  The first offense, simple assault, is a misdemeanor.  The indictment charged and the jury convicted defendant of the second type offense, i.e. assault with physical contact, which includes a statutory maximum of eight years in prison.  The third offense of assault involving a deadly or dangerous weapon or inflicting bodily injury includes a statutory maximum of 20 years in prison.

Defendant argues that the Court erred when it refused to instruct the jury on the lesser offense of simple assault.  Defendant is entitled to an instruction on a lesser-included offense if the lesser offense included some but not all of the elements of the offense charged.  United States v. Pearson, 203 F.3d 1243, 1270 (10th Cir. 2000).  "Simple assault" under Section 111(a)(1) is

---

[12]     Before Congress amended the statute in 2008, Section 111 set forth three separate offenses: (1) simple assault, (2) "all other cases" assault which included any assault that is neither "simple assault" or assault involving a deadly or dangerous weapon or inflicting bodily injury, and (3) assault involving a deadly or dangerous weapon or inflicting bodily injury.  United States v. Hathaway, 318 F.3d 1001, 1008-09 (10th Cir. 2003); see also United States v. Yates, 304 F.3d 818, 822 (8th Cir. 2002) (under Section 111, simple assault is conduct that violates subsection (a), which does not involve actual physical contact, a dangerous weapon, serious bodily injury or intent to commit murder or another serious felony).  Because the Tenth Circuit and other courts had noted that the statute was ambiguous about what differentiated "simple assault" from "all other cases" assault, Congress deleted the "all other cases" phrase from the statute and replaced it with the current language which requires "physical contact with the victim of that assault" or "intent to commit another felony."  18 U.S.C. § 111(a); see Hathaway, 318 F.3d at 1007.

ordinarily defined as "a *willful attempt to inflict injury* upon the person of another, or . . . a *threat to inflict injury* upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." United States v. Martinez, 486 F.3d 1239, 1245 (11th Cir. 2007) (emphasis in original) (citing United States v. Fallen, 256 F.3d 1082, 1088 (11th Cir. 2001)).  In contrast, to find assault with physical contact under Section 111(a)(1), defendant must only intend the act which causes the physical contact, "it is irrelevant whether the defendant intended to cause serious bodily injury." United States v. Gutierrez, 745 F.3d 463, 470-71 (11th Cir. 2014).  Because the elements of "simple assault" are not a subset of the elements of assault with physical contact, the Court correctly overruled defendant's request for an instruction on the offense of simple assault.  See Schmuck v. United States, 489 U.S. 705, 715-16 (1989) (lesser-included offense instruction may not be given if lesser offense includes element not part of greater offense); see also Gutierrez, 745 F.3d at 470 (simple assault ordinarily refers to assault without physical contact and requires higher level of intent than assault with physical contact).

        In a related argument, defendant maintains that the Court should have instructed on all three potential offenses under Section 111.  See Motion To Vacate (Doc. #198) at 12-13 (citing Jones v. United States, 526 U.S. 227 (1999) and United States v. Hathaway, 318 F.3d 1001 (10th Cir. 2003)).  Neither Jones nor Hathaway require the Court to instruct on all offenses in the statute where the indictment charges only one of the three offenses.[13]

_____

        [13]        Defendant also alleges an ex post facto violation because the Court permitted the government to use "all other cases" as a basis for conviction, which altered the statute and amended the indictment.  Motion To Vacate (Doc. #198) at 19-21.  As explained above, the relevant version of the statute at trial did not include the phrase "all other cases" assault.  See supra note 10.  At the instruction conference, government counsel referred to the relevant statutory prong as being commonly referred to as "all other cases" or "all other crimes" of assault.  See Transcript Of Jury Trial - Volume III (Doc. #189) at 872, 904.  Even so, government counsel used the phrase as a shorthand reference to the relevant statutory prong and to explain how courts had commonly referred
                                                                                        (continued...)

The Court overrules defendant's claim that the Court erred by refusing to instruct on the offense of "simple assault."

### 2.  **Omission Of "Physical Harm" Requirement**

Defendant asserts that the instructions did not correctly state the elements of the offense because they omitted a requirement of "physical harm."  <u>Motion To Vacate</u> (Doc. #198) at 10, 13. The charged offense under Section 111(a)(1) only mentions "physical contact."  While "simple assault" under Section 111(a)(1) includes intent to inflict injury, the offense of assault involving physical contact does not require any injury.  Likewise, while Section 111(a)(2) refers to an enhanced penalty for offenders who inflict "bodily injury," the indictment did not charge defendant with an offense under that subsection.  Accordingly, the Court correctly omitted any requirement of "physical harm."

### 3.  **Failure To Include Additional Element Of "Forcible Assault"**

Defendant argues that the Court should have separated the elements of "forcible assault" and "physical contact."  <u>Motion To Vacate</u> (Doc. #198) at 13.  The Court instructed the jury as follows:

> To find defendant guilty of the crime of forcible assault as charged in Counts 1 through 9 of the indictment, the government must prove beyond a reasonable doubt the following essential elements:
>
> > FIRST: on or about the date alleged, defendant forcibly assaulted the individual named in the indictment;
> >
> > SECOND: defendant intentionally performed the act or acts of forcible assault; and

---

[13](...continued)
to that specific prong before the statutory amendment.  <u>See</u> <u>id.</u>  Despite government counsel's references to "all other cases" assault, the indictment charged and the Court instructed only on the offense of assault involving physical contact as set forth in the then current version of 18 U.S.C. § 111(a)(1).  Accordingly, the instructions did not alter the statute or amend the indictment.

THIRD: the individual assaulted was a federal officer who was then engaged in the performance of his or her official duty.

As to the first element, the phrase "forcibly assaulted" means that defendant intentionally caused physical contact with the individual and a reasonable person would be offended by the physical contact.

Instructions To The Jury (Doc. #75) filed December 12, 2012, Instruction 14.

At trial, defendant objected that the above instruction varied from the standard instruction because it did not include the full definition of "forcible assault" which includes simple assault.   The Court overruled the objection because the indictment did not charge and the government did not attempt to show that defendant committed "simple assault," i.e. attempt or threat to inflict injury when coupled with an apparent present ability to do so.   Trial Transcript - Volume III (Doc. #189) at 903.  For reasons explained above, defendant has not shown that he was entitled to an instruction on simple assault.

## 4.  **Instructions Related To Lack Of Investigative Methods**

Defendant argues that the instructions misled the jury about the significance of the government failure to conduct certain investigative techniques.  Defendant argues that Instruction 3 permitted the jury to consider the "nonexistence of certain facts," but Instruction 6 told the jury to disregard the absence of certain facts.  Motion To Vacate (Doc. #198) at 17.  In particular, defendant argues that Instruction 6 incorrectly stated that the government had no duty to perform the collection of evidence or other investigative methods.  Id.  Instructions 3 and 6 stated as follows:

INSTRUCTION NO. 3

In determining the facts of a case, a jury may properly consider two types of evidence.  One is direct evidence such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.

The law makes no distinction between direct and circumstantial evidence, but simply requires you to find the facts in accordance with all evidence in the case, both direct and circumstantial.  * * *

INSTRUCTION NO. 6

You have heard testimony as to the manner in which the government conducted its investigation in this case including certain investigative methods or techniques that were used and certain investigative methods or techniques that were not used.  In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or use any particular method.  The question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of the defendant's guilt.

Instructions To The Jury (Doc. #75).

Defendant has not explained how Instruction 6 is inconsistent with applicable law. Instruction 6 noted that the government is under no obligation to use all investigative methods or any particular method, but it did not relive the government of its ultimate burden to convince the jury "beyond a reasonable doubt of the defendant's guilt."  Instruction 6.  After trial, defendant raised a similar claim which asserted that the government violated his due process rights because it did not do DNA testing on certain items.  The Court overruled defendant's argument as follows:

[T]he Court notes that the government need not employ every available scientific test in every case.  See Arizona v. Youngblood, 488 U.S. 51, 58-59 (1988) (Due Process Clause not violated based solely on government failure to use particular investigatory tool).  Absent bad faith, a prosecutor's failure to conduct forensic tests does not violate any federal constitutional right or a defendant's rights under Brady v. Maryland, 373 U.S. 83 (1963).  See Arizona v. Youngblood, 488 U.S. at 58-59 (in drunk driving case, prosecution may rely solely on police observation and has no constitutional duty to perform breathalyzer test); Armijo v. Tapia, 288 Fed. Appx. 530, 533-34 (10th Cir. 2008) (state has no constitutional obligation to provide DNA analysis); Neil v. Walsh, No. 07 Civ. 6685, 2009 WL 382637 at *5-6 (S.D.N.Y.

Feb. 17, 2009) (denying claim that prosecution should have collected and preserved feces for potentially exculpatory DNA evidence). The prosecutor need not introduce every piece of evidence, but has the discretion to determine what evidence [he or she] needs to introduce to prove the specific charges. <u>Batchilly v. Nance</u>, No. 08 Civ. 7150, 2010 WL 1253921, at *34 (S.D.N.Y. Apr. 2, 2010).

<u>Order</u> (Doc. #139) at 1-2. For substantially these reasons and those stated above, defendant has not shown that Instruction 6 incorrectly stated the law.

Defendant also argues that Instruction 3 incorrectly told the jury to disregard physical evidence. <u>Addendum To Support Habeas Corpus</u> (Doc. #199) at 1-4. Instruction 3 merely told the jury that it may properly consider two types of evidence, direct and circumstantial. The instruction specifically told the jury that the law makes no distinction between the two types of evidence, but simply requires the jury to find the facts in accordance with all evidence in the case, both direct and circumstantial. Defendant has not shown that Instruction 3 incorrectly stated the law.

The Court overrules defendant's claim that Instructions 3 and 6 were erroneous.

### 5.  <u>Instruction Related To Resolution Of Conflicting Testimony</u>

Defendant next argues that Instruction 17 incorrectly told the jury to resolve conflicting testimony with truthfulness. <u>Motion To Vacate</u> (Doc. #198) at 19. Instruction 17 stated as follows:

INSTRUCTION NO. 17

You are the exclusive judges of the factual issues, the weight of the evidence and the credibility of the witnesses. You may, and should, however, take into consideration the general information which you possess as to matters of common knowledge, observation and experience of life.

In weighing the testimony of the witnesses you may consider their demeanor while testifying, their interest or lack of interest in the outcome of the case and all other facts and circumstances which will help you decide the facts of the case. You will decide whether to believe a witness and in evaluating a witness' testimony, you may want to ask yourself the following questions:

(1)     How well could the witness see or hear the things that the witness testified about?

(2)     How well was the witness able to remember and describe what happened?

(3)     Did the witness understand the questions and answer them correctly?

(4)     Did the witness seem believable to you?

If you believe that any witness has intentionally given false testimony on any material fact, you may disregard all or part of his or her testimony, but you are not required to believe or disbelieve all the testimony of any witness.  If there has been conflicting testimony, you should reconcile it with truthfulness, if reasonably possible, but if you cannot do so then you must use your best judgment in determining what testimony you will believe.

People often forget things, or they may honestly believe that something happened even though it later turns out that they were wrong.  Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to reject such testimony.  Two or more persons witnessing an incident may see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to an important issue or an unimportant detail, and whether the discrepancy is innocent or intentional.

Instructions To The Jury (Doc. #75).  Defendant asserts that the above instruction "required the jurors to disregard falsities, conflicting testimony, intentional or not, by reconciling such testimony with truthfulness."  Motion To Vacate (Doc. #198) at 18; see Doc. #228 at 3 (Instruction 17 effectively destroyed "reasonable doubt standard").  Instruction 17 instructs the jury to reconcile conflicting testimony with truthfulness only if it is "reasonably possible" to do so and that if it is not reasonably possible, then the jury should use its best judgment in determining what testimony it will believe.  Defendant does not explain how this instruction favored the prosecution or was an incorrect statement of the law.  The Court therefore overrules defendant's challenge to Instruction 17.

### G.     Sentencing

#### 1.   Criminal History Score (Claim 7)

Defendant argues that the Court did not correctly calculate his criminal history.  Motion To Vacate (Doc. #198) at 7-9.  Defendant argues that the Court should have assessed only

one criminal history point for three of his prior convictions.  On March 8, 2002, the state circuit court in St. Louis County, Missouri sentenced defendant to concurrent sentences based on his convictions of (1) unlawful use of a weapon on May 17, 2000 when he pointed a .38 revolver at a woman, her children and her sister; (2) unlawful use of a weapon on May 29, 2000 when he threw a handgun while he was running from police; and (3) possession of codeine on September 1, 2000.  For purposes of defendant's criminal history score. this Court counted all three offenses because the sentences were within 15 years of the instant offense and they were greater than one year and one month.  See U.S.S.G. §§ 4A1.1(a) (add three points for each prior sentence of imprisonment exceeding one year and one month); 4A1.2(e)(1) (count any sentence of imprisonment exceeding one year and one month that was imposed within 15 years of instant offense).

Defendant apparently asserts that the Court should not have counted these three offenses because the state court imposed the sentences more than ten years before he commenced the instant offense.  Defendant apparently relies on Section 4A1.2(e)(2), but that provision applies only to sentences of imprisonment that do not exceed one year and one month.  U.S.S.G. § 4A1.2(e)(2).  Here, defendant received concurrent sentences of at least five years on each of the three challenged convictions.  See Presentence Investigation Report ("PSIR") (Doc. #129), ¶¶ 46-48. The Court therefore properly counted each of the offenses in calculating defendant's criminal history.

Defendant also argues that the Court should have counted the three sentences as a single sentence because the state court sentenced him in the three cases on the same day. Section 4A1.2(a)(2) of the Guidelines provides that prior sentences "always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest."  U.S.S.G. § 4A1.2(a)(2).  In his motion and supplemental memoranda, defendant does not dispute that he was

arrested following each incident.  Accordingly, under Section 4A1.2(a)(2), the Court correctly counted the three sentences as separate sentences.

The Court overrules defendant's claim that the Court did not properly calculate his criminal history score.

### 2.  Sentence Above Statutory Maximum (Claim 8)

Defendant argues that the Court erroneously sentenced him above the statutory maximum term of imprisonment in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013). Motion To Vacate (Doc. #198) at 7-19, 28-31, 38-45.  In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155.  The statutory maximum under Section 111 is eight years.  Because Section 111 does not set forth a statutory minimum, Alleyne does not appear to apply.

Liberally construed, defendant's motion asserts that his sentence of 144 months exceeds the statutory maximum of 96 months on each count.  The jury convicted defendant on eight separate counts.  After considering the various statutory factors under Section 3553(a), the Court concluded that a total sentence of 144 months in prison was appropriate.  Because the Court imposed sentence on multiple counts, it had discretion to run the terms concurrently or consecutively to reach the total punishment.[14]  See 18 U.S.C. § 3584; see also U.S.S.G. § 5G1.2(d) (if sentence imposed on count carrying highest statutory maximum is less than total punishment, sentence imposed on one or more other counts shall run consecutively to extent necessary to produce combined sentence equal to total punishment); App. Note 1 to U.S.S.G. § 5G1.2(d) (if no count carries adequate statutory maximum, consecutive sentences to be imposed to extent necessary to achieve total punishment).

---

[14]     As explained above, the Court sentenced defendant to 96 months on each of Counts 2 through 8, to be served concurrently, and 96 months on Count 9, of which 48 months to be served consecutively to the other counts and 48 months to be served concurrently to the other counts.

The Court did not impermissibly increase the statutory maximum sentence.  Accordingly, the Court overrules defendant's eighth claim for relief.

## II.     Assistance Of Trial Counsel

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness."  United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).

Defendant alleges that Robinson provided ineffective assistance because he (1) "guaranteed" that a jury would acquit him on all charges, (2) failed to challenge the government's peremptory strike of the only African-American member of the venire, (3) failed to subject the government case to meaningful adversarial testing, and (4) failed to challenge the government's unauthenticated evidence under Rule 901 of the Federal Rules of Evidence.

### A.     Guaranteed Acquittal (Claim 1)

Defendant argues that Robinson "guaranteed" that a jury would acquit him on all charges. See Doc. #198 at 3.  Initially, the Court questions the veracity of defendant's allegation.  See United States v. Golden, No. 2:08-CR-00164-KJD, 2014 WL 2801320, at *5 (D. Nev. June 19, 2014) (claim

that attorney would guarantee win and refuse to let client take plea bargain palpably incredible). Robinson adamantly denied that he made such a statement. See Transcript Of Motions Hearing Of February 13, 2013 (Doc. #227) at 6 ("That was absolutely never discussed. And I always advise my clients that if you go to trial, adverse things can happen regardless of what we believe the strength or weaknesses of the case may be."). In addition, defendant's allegation is inconsistent with his prior request that he wanted counsel that was willing to take his case to trial. In a motion for new counsel, defendant asserted that Spies (counsel immediately before Robinson) provided ineffective assistance because he attempted to induce defendant to plead guilty and forego a trial. See Letter From Defendant To Court dated July 26, 2012 (Doc. #45). Defendant's current allegation is essentially the opposite, i.e. that Robinson induced defendant to go to trial and forego a guilty plea.[15]

Even if the Court assumes that Robinson told defendant that a jury would acquit him, defendant has not alleged prejudice, i.e. that absent such advice, he would have pled guilty. Because defendant has consistently maintained his innocence (even demanding new counsel when Spies allegedly attempted to convince him to plead guilty and forego trial), he cannot show that Robinson's alleged advice – which presumably convinced him to proceed with trial – was prejudicial. The Court overrules defendant's first claim for relief.

**B.    Failure To Raise Batson Challenge (Claim 2)**

Defendant alleges that Robinson provided ineffective assistance because he failed to challenge the government's peremptory strike of the only African-American member of the venire.

---

[15]    In addition, shortly before defendant testified in front of the jury, he testified about counsel's advice on the decision to testify. At that time, defendant acknowledged that counsel did not predict whether the jury would convict defendant if he did or did not testify. See Transcript Of Trial - Volume - III (Doc. #189) at 879. If Robinson had truly told defendant that a jury would acquit him of all charges (whether he did or did not testify), defendant likely would have so informed the Court during his testimony outside the presence of the jury.

Even if the Court assumes that counsel's failure to object was deficient, defendant has not shown prejudice.  To establish prejudice for failure to raise a <u>Batson</u> challenge, defendant must show a reasonable probability that (1) had counsel objected, the Court would have sustained his challenge and (2) if the prospective juror had been on the jury, the outcome of trial would have been different. <u>See</u> <u>Sneed v. Fl. Dep't of Corr.</u>, 496 F. App'x 20, 27 (11th Cir. 2012).  Defendant has not alleged sufficient facts to establish either prong.  The government has offered a non-discriminatory reason for the peremptory challenge, <u>i.e.</u> the prospective juror stated that her husband had been an inmate at a federal prison.  <u>See</u> <u>McGee v. Kirkland</u>, 506 F. App'x 588, 590 (9th Cir. 2013) (striking juror because relatives had been convicted of crimes is permissible race neutral reason; prosecutors often attempt to ensure that juries have few, if any, such individuals); <u>United States v. Crawford</u>, 413 F.3d 873, 875 (8th Cir. 2005) (no <u>Batson</u> violation when juror dismissed because relatives prosecuted or convicted of crime); <u>United States v. Lewis</u>, 117 F.3d 980, 983 (7th Cir. 1997) (dismissal of juror because he had two relatives in prison race-neutral explanation); <u>Vale v. Gibson</u>, No. C 14-1588 PJH (PR), 2015 WL 1927784, at *7 (N.D. Cal. Mar. 27, 2015) (family member involvement in criminal justice system race-neutral explanation, even if prospective juror avers that he or she can put experience aside); <u>see also</u> <u>United States v. Hendrix</u>, 509 F.3d 362, 370 (7th Cir. 2007) (no basis for reversal on appeal unless reason given by government "completely outlandish" or other evidence demonstrates its falsity).  Defendant has not satisfied his burden to allege facts that raise a suspicion that the government explanation is a pretext for race discrimination.  <u>United States v. Aljabri</u>, No. CIV.A. 12-C-7380, 2013 WL 3975255, at *5 (N.D. Ill. July 30, 2013) (overruling claim of ineffective assistance for failure to raise <u>Batson</u> because defendant did not establish suspicion of discrimination).  Because defendant has not shown that counsel's failure to object under <u>Batson</u> was prejudicial, the Court overrules his second claim for relief.

### C.    Failure To Subject Government Case To Adversarial Testing (Claim 3)

Defendant alleges that Robinson provided ineffective assistance because he failed to subject the government case to meaningful adversarial testing.  Doc. #198 at 52.  Beyond the claims that the Court has already addressed in this order, defendant does not identify any additional alleged errors by counsel.  Strickland mandates that the Court be "highly deferential" in its review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  The Court must not second-guess counsel's assistance with the benefit of hindsight simply because defendant was convicted.  See id.  Although counsel did not secure defendant's acquittal on all counts, his strategy and conduct was reasonable and competent.  Indeed, from the Court's perspective and in light of the overwhelming evidence against defendant, trial counsel provided superb representation and vigorously defended his client.  Counsel's competency is illustrated in part by the fact that he secured defendant's acquittal on Count 1.  Even if defendant could present some credible claim that counsel's performance was deficient, he has not shown prejudice, i.e. a reasonable probability that absent the alleged errors, the jury would have reached a different result.  The Court overrules defendant's third claim for relief.

### D.    Failure To Challenge Government Use Of Unauthenticated Evidence (Claim 4)

Defendant alleges that Robinson provided ineffective assistance because he failed to challenge the government's unauthenticated evidence under Rule 901 of the Federal Rules of Evidence.  Doc. #198 at 51.  Defendant apparently asserts that counsel should have objected to testimony about the items that he allegedly threw at prison guards.  As noted above, the prosecution need not introduce every piece of evidence or employ every scientific test.  In addition, as a practical matter, because the government did not retain the substances, counsel could not demand that the

government produce them.[16]  Finally, "[r]egardless of what the substance later turned out to be, the act of throwing an unknown substance onto a BOP official clearly causes the offensive physical conduct outlined in the statute."  McIntosh, 577 F. App'x at 762.  Counsel's failure to insist that the government produce the actual fluids and substances was not deficient or prejudicial.  The Court therefore overrules defendant's fourth claim for relief.

### III.   Assistance Of Appellate Counsel

Defendant argues that on appeal, Bailey provided ineffective assistance because he did not argue that (1) the indictment did not allege that the claimed assault was "intentional," (2) the district court erred in denying his motion to dismiss based on destruction of evidence, (3) the district court lacked jurisdiction because the government did not file a complaint or obtain a writ of habeas corpus ad prosequendum, (4) the district court erroneously allowed the government's peremptory challenge to the only African-American member of the venire, (5) the district court admitted statements which he made while in custody and cuffed in his cell, (6) the jury instructions were erroneous and constituted a constructive amendment of indictment, (7) the evidence was insufficient to sustain his convictions, (8) the district court did not correctly calculate his criminal history score, (9) the sentence was unreasonable, and (10) the judgment was invalid.  See id. at 4, 9, 12, 30-31; Addendum To Habeas Corpus Brought Under 28 U.S.C. § 2255 (Doc. #208) filed July 10, 2015 at 2-3.

For substantially the reasons stated above, the Court finds that Bailey's failure to raise the issues in Claims 2, 3, 4, 6 and 8 was not deficient or prejudicial.  It addresses defendant's remaining claims as follows:

_____

[16]        As explained above, because the exculpatory value of the evidence was not apparent before government agents discarded the materials and defendant had presented no evidence that the government acted in bad faith, defendant did not and has not shown any violation of the Supreme Court holdings in Trombetta or Youngblood.

-30-

### A.      Failure To Challenge Validity Of Indictment (Claim 1)

Defendant argues that on appeal, Bailey provided ineffective assistance because he did not argue that the indictment was defective because it did not allege that the claimed assault was "intentional." Doc. #208 at 2. The second prong of Section 111, assault involving physical contact, is a general intent crime. See United States v. Zunie, 444 F.3d 1230, 1234 (10th Cir. 2006) (specific intent crime is one in which act committed voluntarily and purposely with specific intent to do something law forbids; general intent crime is one in which act done voluntarily and intentionally, and not because of mistake or accident); see also United States v. Benally, 146 F.3d 1232, 1237 (10th Cir. 1998) (assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6) is general intent crime). In other words, the government had to prove that defendant "intended to commit a forcible assault." United States v. Woody, 55 F.3d 1257, 1265-66 (7th Cir. 1995); United States v. Narvaez, No. 14 CR 562-2, 2016 WL 2851558, at *5 (N.D. Ill. May 16, 2016). When defendant's commission of the charged act strongly implies his general intent, the indictment need not specifically allege that intent. United States v. Taylor, 454 F.3d 1075, 1081 (10th Cir. 2006); see also United States v. Mozee, 405 F.3d 1082, 1087 (10th Cir. 2005) (as general intent crime, aggravated assault allows element of intent to be inferred from doing act constituting offense charged, such as pointing loaded gun at victim); United States v. Fitzgerald, 882 F.2d 397, 399 (9th Cir. 1989) (district court did not err in refusing to dismiss indictment because charged assault statute did not require specific intent). Accordingly, counsel's failure to challenge the sufficiency of the indictment on appeal was not deficient or prejudicial. See Taylor, 454 F.3d at 1081 (counsel not ineffective for failing to challenge omission from indictment of explicit allegation of general intent). The Court overrules defendant's first claim for relief.

**B.**     **Failure to Challenge Admission Of Custodial Statements (Claim 5)**

Defendant argues that on appeal, Bailey provided ineffective assistance because he did not argue that the district court admitted statements which he made while in custody and cuffed in his cell.  Doc. #208 at 2.  Defendant was in custody and in restraints during the charged assaults. Defendant has not identified specific statements which he challenges or any basis for such a challenge.  The Court therefore overrules his fifth claim for relief.

**C.**     **Failure To Challenge Sufficiency Of The Evidence (Claim 7)**

Defendant argues that on appeal, Bailey provided ineffective assistance because he did not argue that the evidence was insufficient to sustain his convictions.  See Doc. #208 at 2.  Defendant contends that the government presented insufficient evidence to convict him on any count because it did not show that he "forcibly assaulted and engaged in acts involving physical contact."  In particular, defendant claims that the Court did not require the government to present evidence of the specific nature of each alleged bodily fluid.  Doc. #198 at 40-45.  As the Tenth Circuit noted, "[r]egardless of what the substance later turned out to be, the act of throwing an unknown substance onto a BOP official clearly causes the offensive physical conduct outlined in the statute."  McIntosh, 577 F. App'x at 762.  Defendant therefore cannot show that counsel's failure to note the government's lack of proof of the specific nature of each alleged bodily fluid was deficient or prejudicial.  The Court overrules defendant's seventh claim for relief.

**D.**     **Failure to Challenge Reasonableness Of Sentence (Claim 9)**

Defendant argues that on appeal, Bailey provided ineffective assistance because he did not argue that the sentence was unreasonable.  Doc. #208 at 2.  On appeal, Bailey challenged defendant's sentence as procedurally and substantively unreasonable.  Doc. #193 at 2.  Accordingly, counsel's performance was not deficient in this regard.  The Court overrules defendant's ninth claim

-32-

for relief.

### E.      Failure To Challenge Validity Of Judgment (Claim 10)

Defendant argues that on appeal, Bailey provided ineffective assistance because he did not "challenge the judgment of conviction."  Doc. #208 at 3.  Beyond the claims that the Court has already addressed in this order, defendant does not state any further grounds for counsel to challenge the validity of his conviction.  The Court therefore overrules defendant's tenth claim for relief.

## IV.      Prosecutorial Misconduct

Defendant asserts prosecutorial misconduct because government counsel stated multiple times in closing argument that to find defendant not guilty of the crimes charged, the jury would have to find a conspiracy among all of the witnesses and stated that under policy, the BOP was not required to test everything including urine soaked clothing.

Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of so infected proceedings with unfairness as to make defendant's conviction a denial of due process.  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974); <u>see also</u> <u>United States v. Anaya</u>, 7257 F.3d 1043, 1052 (10th Cir. 2013) (prosecutorial misconduct violates defendant's right to due process if it infects trial with unfairness and denies right to fair trial).  Prosecutors have considerable latitude to respond to an argument made by opposing counsel.  <u>United States v. Hernandez-Muniz</u>, 170 F.3d 1007, 1012 (10th Cir. 1999).

### A.      Comments About Absence Of Conspiracy Between Witnesses (Claim 1)

Defendant argues that government counsel continuously asserted that the jury could only find him not guilty if it found a "conspiracy" between the government witnesses.  At trial, defendant testified that at least two officers lied about the alleged events, prison officials did not preserve video that supported his version of events and no one interviewed other inmates who witnessed some of

the events.  See Transcript Of Trial - Volume - IV (Doc. #186) at 99, 111, 135, 138, 153, 176, 210, 327, 334; see also id. at 83-84 (officers would debrief each other at shift change and if they had dispute with inmate would get next officers to continue to stick it to him); id. at 244 (prison officials will show on video what they want to show; no use to complain on video because prison officials could do anything).  In closing, government counsel argued that defendant's defense was essentially that all witnesses agreed to lie about the alleged events in an effort to convict defendant because of his dispute with a prison guard.  In closing, government counsel argued that "now that you know what has to be proven and what doesn't have to be proven beyond a reasonable doubt, the only way he's acquitted is if you think every single person who testified is involved in a conspiracy." Transcript Of Trial - Volume - III (Doc. #189) at 925.

In context, government counsel's statement about a "conspiracy" was merely a comment on the evidence showing the witnesses' credibility, i.e. that it would have taken a lot of planning for so many government witnesses to give such false testimony and that each witness would put his job at risk if he testified falsely.  Government counsel is free to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility.  Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005); see United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005) (argument or evidence impermissible vouching only if jury could reasonably believe prosecutor is indicating personal belief in witness' credibility by explicit personal assurances or by implicitly indicating information not presented to jury supports witness testimony).  Defendant and his counsel did not use the word "conspiracy," but they suggested that all of the government witnesses were on the same page, that prison officials discarded or did not review certain videos because they did not support their actions and essentially would cover for each other.  See United States v. Franklin-El, 555 F.3d 1115, 1126 (10th Cir. 2009) (prosecutor comments permissible where responsive to defense

counsel's closing argument discussing numerous witness credibility issues and questioning their motives to tell truth).  The Tenth Circuit has repeatedly recognized that in replying to arguments by defense counsel, prosecutors have considerable latitude in closing argument.  United States v. Fleming, 667 F.3d 1098, 1105 (10th Cir. 2011) (citing United States v. Janus Indus., 48 F.3d 1548, 1558 (10th Cir. 1995)); see United States v. Hall, 625 F.3d 673, 685 (10th Cir. 2010).

Even if government counsel's suggestion that the jury had to find a "conspiracy" was beyond the scope of appropriate argument, defendant has not shown that the comments were prejudicial. The Court instructed the jury that "[s]tatements and arguments of counsel are intended to help you understand the evidence and apply the law, but they are not evidence in the case," Instruction 7, and that "[y]ou are the exclusive judges of the factual issues, the weight of the evidence and the credibility of the witnesses," Instruction 17.  Because the Court presumes that the jury follows its instructions, United States v. Veater, 576 F. App'x 846, 854 (10th Cir. 2014); United States v. Rogers, 556 F.3d 1130, 1141 (10th Cir. 2009), government counsel's statements did not prejudice defendant or rise to the level of a due process violation.  The Court overrules defendant's first claim of prosecutorial misconduct.

### B.      Comments About BOP Policy On Testing (Claim 2)

Defendant also asserts prosecutorial misconduct because in closing, government counsel stated that under policy, BOP was not required to test everything including urine soaked clothing.  As explained above, the government need not introduce all evidence to support its case or conduct any specific forensic tests.  Government counsel's comments responded to defendant's suggestion that prison officials did not preserve all evidence and did not test the substance that defendant allegedly threw at prison guards.  Even if government counsel's comments about BOP policy were beyond the scope of appropriate argument, defendant has not shown that the comments

were prejudicial in light of the Court's instructions.  The Court therefore overrules defendant's

second claim of prosecutorial misconduct.

**V.      Motion To Enforce (Doc. #206)**

Defendant seeks possession of his discovery materials because they are "material in . . .

substantiating his claim of actual innocence."  Doc. #206 at 2.  Defendant acknowledges that his

attorneys had discovery while they represented him through trial.  He also acknowledges that while

he was acting pro se, the government provided a compact disc with all discovery and Corrections

Corporation of America allowed him access to a computer and the disk in his cell.  Defendant has

not demonstrated a need for the discovery materials at this time, nor has he provided any authority

that he is entitled to them.  Defendant's blanket claim that the discovery materials would show

"actual innocence" is insufficient.  Defendant had access to the materials while he proceeded pro

se before sentencing and he had adequate opportunity to identify any materials showing his actual

innocence.  The Court therefore overrules defendant's request for discovery materials.

**VI.     Motion For New Trial (Doc. #207)**

Defendant seeks a new trial because the government failed to preserve exculpatory evidence

which consisted of "the soiled clothing following each alleged assault."  Doc. #207 at 3.  As

explained above, because defendant did not show that the exculpatory value of the evidence was

apparent or that the government had destroyed the evidence in bad faith, he is not entitled to relief.

In addition, "[r]egardless of what the substance later turned out to be, the act of throwing an

unknown substance onto a BOP official clearly causes the offensive physical conduct outlined in

the statute."  McIntosh, 577 F. App'x at 762.  The Court overrules defendant's motion for new trial.

**VII.    Motions For Expansion Of The Record (Docs. #214 and #216)**

Under Rule 7, defendant seeks to expand the record on his Section 2255 motion to include

all discovery (including witness statements, videos and photographs), his "legal materials," the jury instructions and counsel's appellate brief.  Doc. #214 at 5, Doc. #216 at 1.  The jury instructions are part of the record.  The Court also has electronic access to the appellate record which includes counsel's appellate brief.  As to all other documents and materials, defendant has not shown a particularized need for them and it does not appear that they are necessary to decide any of the claims in his motion to vacate.  See Rule 7 of the Rules Governing Section 2255 Proceedings (court may order expansion of record to include additional materials relevant to motion); see 28 U.S.C. § 753 (fees for transcripts paid by United States if judge certifies that suit or appeal is not frivolous and that transcript is needed to decide issue presented); 28 U.S.C. § 2250 (United States shall furnish without cost to indigent prisoner such documents as judge may require); Brown v. N.M. Dist. Court Clerks, 141 F.3d 1184, 1998 WL 123064, at *3 n.1 (10th Cir. Mar. 19, 1998) (to obtain free copy of transcript, habeas petitioner must demonstrate claim not frivolous and materials needed to decide issue presented by suit); United States v. Sistrunk, 992 F.2d 258, 260 (10th Cir. 1993) (under 28 U.S.C. § 753(f), indigent defendant entitled to free copy of transcript on showing of particularized need); Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir. 1992) (prisoner does not have right to free transcript simply to search for error in record).

**VIII.   Motion For Documents Without Cost (Doc. #222)**

Defendant asks for a copy of the transcript of sentencing on April 16, 2013.  Doc. #222 at 1.  Defendant argues that the transcript will show that Robinson admitted that he provided ineffective assistance and that he had a conflict of interest.  Id.  The transcript is already part of the record.  See Transcript Of Sentencing (Doc. #191).  The Court has reviewed the transcript and finds

no admission by Robinson that he provided ineffective assistance of counsel.[17]

## IX.    Motion For Computer Files (Doc. #226)

Defendant seeks "all computer files that contain information of the transcripts and discovery materials."[18] Doc. #226 at 1.  Again, defendant has not shown a particularized need for such materials  and it does not appear that they are necessary to decide any of the claims in his motion to vacate.  The Court therefore overrules defendant's request for computer files.

---

[17]    Robinson did acknowledge that he was unable to meet with defendant before the scheduled sentencing on April 16, 2013 to discuss the amended presentence investigation report filed on April 15, 2013.  The Court granted defendant's request for a continuance based on the late filing of the amended PSIR.  Defendant does not explain how counsel's failure to discuss the amended PSIR on April 15, 2013 was deficient or prejudicial.

[18]    Defendant also asks for a copy of 18 U.S.C. § 3584, which grants the Court discretion to impose concurrent or consecutive sentences on multiple counts.  The statute does not support defendant's claim that his sentence was unlawful.  The statute likely is readily available to defendant.  In any event, the statute reads as follows:

Multiple sentences of imprisonment

(a)  Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

(b)  Factors to be considered in imposing concurrent or consecutive terms.--The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

(c) Treatment of multiple sentence as an aggregate.--Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584.

## X.      Motion To Prosecute (Doc. #228)

Defendant asks the Court to prosecute the government and victims for false and fraudulent statements under 18 U.S.C. § 1001.  Doc. #228 at 1-2.  Defendant has not shown that any government witness testified falsely.  The fact that the jury accepted the sworn testimony of the victims and rejected defendant's explanation of the incidents does not establish that the victims gave false testimony.  The Court overrules defendant's motion to prosecute.

## XI.     Motions To Take Judicial Notice (Doc. #230, #232)

Defendant asks the Court to take judicial notice that a party in interest has sabotaged and manipulated the <u>Transcript Of Hearing On February 13, 2013</u> (Doc. #227) in violation of the Court Reporter Act.  Doc. #230 at 1-2.  Defendant apparently alleges that the government did not permit the court reporter to transcribe the entire proceeding because the transcript includes notations of "off-the record discussion[s]" between defendant and his attorney.  In particular, defendant argues that the following portion of the transcript is incomplete:

THE DEFENDANT: I'll represent myself.

MR. ROBINSON: Rodney, don't do that.

THE DEFENDANT: I'll represent myself.

THE COURT: Well, you come forward, then, please, and I've got some questions to ask you --

MR. ROBINSON: Your Honor, could I say one thing to him?

(An off-the-record discussion was had between the defendant and the attorney.)

THE DEFENDANT: Man, I got one life to live, man.

(An off-the-record discussion was had between the defendant and the attorney.)

THE COURT: Actually, you know what, Mr. Robinson, we have, I think, all the attorneys in here for the next matter. Would you like to have some time to confer

with your client.

MR. ROBINSON: I could, Your Honor.  I would advise the Court I have a two o'clock plea down in Judge O'Hara's chambers and I don't know how the Court would want to --

THE COURT: Why don't you go take care of your plea.  I'll take this other matter up.  And then when you're done with Judge O'Hara, do you have time to come back and talk to Mr. McIntosh?

MR. ROBINSON: I do, Your Honor.

THE COURT: Why don't we take things in that order and I'll be available after you've had a chance to visit with him.

Transcript Of Hearing On February 13, 2013 (Doc. #227) at 22-23.  Absent specific instruction to the contrary, the court reporter does not transcribe confidential discussions between a client and his attorney.  In addition, defendant did not ask that the discussion be transcribed.  Defendant has not shown that the transcript has been manipulated or that any alleged missing colloquy would support his claims for relief.

Defendant next asks the Court to take judicial notice that (1) his right to due process was violated because the Court "systematically discarded" his filings showing actual innocence and (2) the government lied to prevent him from obtaining relief under Section 2255.  Doc. #232 at 1-3. Defendant's allegations are baseless.  For reasons stated in this order, defendant has not shown that he is actually innocent of any count of conviction.  He also has presented no evidence that government counsel lied in any of the filings in this matter.  The Court therefore overrules defendant's request for judicial notice.

## XII.   Motion For Declaratory Judgment (Doc. #231)

Defendant seeks a declaratory judgment that he is actually innocent.  Doc. #231 at 3.  The Court has evaluated defendant's claims in the context of his Section 2255 motion.  As explained

above, defendant has not shown that he is entitled to relief on any of his claims.  The Court has no

separate authority to vacate his criminal conviction under the guise of a declaratory judgment under

28 U.S.C. § 2201.  The Court therefore overrules defendant's motion.

**XIII.   Motion For Discovery (Doc. #233)**

Defendant seeks a copy of a video to show that he did not throw any sort of liquid at Amy

Holmes (Count 4).  Doc. #233 at 2-3.  As defendant notes, the government concedes that the video

does not show that defendant threw any liquid at her or that her shield had any liquid on it.  Id. at

2.  Even so, the government presented other evidence to establish that defendant did in fact commit

the assault.  Defendant has not shown that the video would prove his innocence or is otherwise

relevant to his Section 2255 motion. The Court therefore overrules defendant's request.

**XIV.   Motion For Discovery (Doc. #235)**

Defendant asks the Court to subpoena various witnesses.  Doc. #235 at 1-3.  Defendant

points to inconsistencies in their testimony and potential topics for cross-examination, but he has

not shown how this information supports his claims that counsel provided ineffective assistance at

trial and on appeal.  The Court overrules defendant's motion for discovery.

**XV.   Motion For Actual Innocence (Doc. #236)**

Defendant asks the Court to find that he is actually innocent.  Defendant states that the

testimony of numerous prison employees was "completely false" and that he did not throw "bodily

fluids" on them.  Doc. #236 at 1-2.  Defendant is not entitled to have his conviction vacated based

on his bare assertion of innocence.  In addition, defendant merely claims innocence of throwing

bodily fluids.  As the Tenth Circuit noted, "[r]egardless of what the substance later turned out to be,

the act of throwing an unknown substance onto a BOP official clearly causes the offensive physical

conduct outlined in the statute."  McIntosh, 577 F. App'x at 762.  The Court therefore overrules

defendant's motion for actual innocence.

## XVI.   Motion For Judicial Estoppel (Doc. #237)

Defendant apparently argues that the government should be judicially estopped because the presentence investigation report is inconsistent with the government's stated position in the Sentencing Guidelines and in Title 18, United States Code, Section 111.  In particular, defendant asserts that the presentence investigation report overstates his criminal history points under the Guidelines and incorrectly states that the Court can sentence him to a term of imprisonment which is longer than the statutory maximum.  Defendant has not shown any viable claim of estoppel.[19]  For reasons stated above, the Court correctly calculated defendant's criminal history score and because the Court imposed sentence on multiple counts, it had discretion to run the terms concurrently or consecutively to reach the total punishment.  See supra text, Analysis, Part I. G.  The Court overrules defendant's motion for judicial estoppel.

## XVII.  Motion For All Documents Filed By Defendant (Doc. #238)

Defendant seeks to obtain a copy of all documents that he has filed with regard to his Section 2255 motion.  Doc. #238.  The Clerk previously provided defendant a copy of the docket sheet.  The Court directs the Clerk to send a new updated copy of the docket sheet with this order.  Defendant has not shown that it is necessary for him to obtain an extra copy of all of his filings.  The Court therefore overrules his request.

_____

[19]     Judicial estoppel is an equitable doctrine that prohibits a party from deliberately changing litigation positions to suit its needs.  Eastman v. Union Pac. R.R., 493 F.3d 1151, 1156 (10th Cir. 2007).  Entrapment by estoppel requires a party to allege that the government affirmatively misled the party as to the state of the law and that party proceeded to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns.  United States v. Apperson, 441 F.3d 1162, 1204 (10th Cir. 2006).

**XVIII. Motion To Receive Disposition Of The Court (Doc. #239)**

Defendant asks the Court to mail an extra copy of this order by a separate envelope because he "anticipates a breach in the normal U.S. Postal mailing procedures, that will ultimately circumvent him from being in receipt of the Court's response in time in order to file any necessary cause of action on time to satisfy filing requirements." Doc. #239 at 1-2. The Clerk's Office standard procedure should ensure that defendant receives a copy of this order. The Court overrules defendant's request to have the Clerk send multiple copies of this order.

## Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record). The Court overrules defendant's motion for an evidentiary hearing. See Motion For An Evidentiary Hearing Per Rules Of Section 2255 Proceedings (Doc. #234) filed February 19, 2016.

## Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate

of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).[20]   To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)).   For reasons stated above, the Court finds that defendant has not satisfied this standard.   The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion To Vacate, Set Aside, Or Correct Brought Under Title 28 U.S.C. § 2255 (Doc. #198) filed April 6, 2015 is **OVERRULED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Enforce (Doc. #206) filed July 9, 2015, defendant's Motion For A New Trial Brought Under Federal Rules Of Criminal Procedure 33 (Doc. #207) filed July 9, 2015, defendant's Motion For Expansion Of The Record Under Rule 7(a) Governing Section 2255 Proceedings (Doc. #214) filed October 26, 2015, defendant's Motion For The Court To Take Judicial Notice (Doc. #216) filed November 20, 2015, defendant's Motion For Documents Without Cost Brought Under Title 28 U.S.C. § 2250 (Doc. #222) filed January 25, 2016, defendant's Motion For Materials Regarding Computer Files (Doc. #226) filed January 25, 2016, defendant's Motion For The Court To Prosecute Defendant(s) Under 18 U.S.C. § 1001 For Fraudulent Statements (Doc. #228) filed January 28, 2016, defendant's Motion To Take Judicial Notice By Fraud From The Court Via Court Transcripts (Doc. #230) filed February 8, 2016,

---

[20]   The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

defendant's Motion For Declaratory Judgment Under Title 28 U.S.C. § 2201 (Doc. #231) filed February 8, 2016, defendant's Motion For The District Court To Take Judicial Notice (Doc. #232) filed February 11, 2016, defendant's Motion For Discovery Request Under Rule 6 Of Rules Governing Section 2255 Proceedings (Doc. #233) filed February 19, 2016, defendant's Motion For An Evidentiary Hearing Per Rules Of Section 2255 Proceedings (Doc. #234) filed February 19, 2016, defendant's Motion For Issuance Of Subpoenas (Doc. #235) filed February 19, 2016, defendant's Motion For Actual Innocence In Supplement To Doc.'s #222, 223, 24, 25 and #226 Of 28 U.S.C. § 2255 Filing (Doc. #236) filed February 19, 2016, defendant's Motion For Judicial Estoppel Filed In Re The Motion To Vacate Filed Under 28 U.S.C. § 2255 (Doc. #237) filed February 22, 2016, defendant's Motion For Documents Without Any Cost Brought Under Title 28 U.S.C. § 2250 (Doc. #238) filed February 22, 2016 and defendant's Motion To Receive The Disposition Of The Court Response To The 28 U.S.C. § 2255 (Doc. #239) filed March 21, 2016 are **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion For Right To Review Under Title 5 United States Code § 702 (Doc. #240) and defendant's [Motion For] Writ Of Habeas Corpus Ad Subjiciendum (Doc. #241) filed June 24, 2016 are **OVERRULED as moot**.

The Court directs the Clerk to send defendant an updated copy of the docket sheet with this Order.

Dated this 5th day of August, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-45-