# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 11-20085-01-KHV |
| RODNEY MCINTOSH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On June 18, 2013, the Court sentenced defendant to 144 months in prison.   On July 20, 2020, defendant filed a Motion For Compassionate Release (Doc. #331), which seeks release based on the Coronavirus Disease-2019 ("COVID-19") pandemic.   On August 11, 2020, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant.   For reasons stated below, the Court dismisses defendant's motion.

## Factual Background

On October 6, 2011, a grand jury charged defendant with nine counts of forcible assault against Bureau of Prisons ("BOP") employees in violation of 18 U.S.C. § 111(a)(1).   See Indictment (Doc. #1).   Each count pertained to different incidents involving various BOP employees.   After a seven-day trial, a jury found defendant not guilty on Count 1 and guilty on Counts 2 through 9.

Defendant's total offense level was 20, with a criminal history category VI, resulting in a guideline range of 70 to 87 months in prison.   The statutory penalty under each count did not include a minimum term but included a maximum term of eight years in prison.   See 18 U.S.C.

§ 111(a)(1).   At sentencing, the Court varied upward from the Guidelines range and sentenced defendant to a total term of 144 months in prison.[1]   See Judgment In A Criminal Case (Doc. #173) filed June 20, 2013 at 2.

On July 30, 2014, the Tenth Circuit affirmed defendant's convictions and sentence.   See United States v. McIntosh, 573 F. App'x 760 (10th Cir. 2014).   On December 8, 2014, the Supreme Court denied defendant's petition for a writ of certiorari.   See United States v. McIntosh, 135 S. Ct. 768 (2014).

Defendant currently is confined at USP Thomson, a BOP facility in Thomson, Illinois. USP Thomson houses 1,120 inmates.   See BOP, USP Thomson, https://www.bop.gov/locations/ institutions/tom (last visited Sept. 22, 2020).   As of September 22, 2020, 58 inmates and 55 staff members at USP Thomson had tested positive for COVID-19. See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus (last visited Sept. 22, 2020).   Fifty-four of the 58 inmates and 47 of the 55 staff members who tested positive have recovered.   See id.   Of 871 completed inmate tests for COVID-19 at USP Thomson, 56 were positive.   See id.

Defendant is 39 years old.   He states that because of hypertension and the conditions at USP Thomson, he is at high risk of contracting COVID-19 and of severe illness or death if he contracts it.   Defendant takes prescription medication for hypertension.   On July 13, 2020, after a consultation, a medical doctor reported that defendant was doing well on the medication with no side effects and that his blood pressure was controlled that day.   See BOP Health Services Clinical

---

[1]        The term of imprisonment consisted of 96 months on each of Counts 2 through 8, to be served concurrently, and 96 months on Count 9, of which 48 months to be served consecutively to the other counts and 48 months to be served concurrently to the other counts.

Encounter (July 13, 2020) (Doc. #336-1) at 1–3.   With good time credit, defendant's projected release date is September 15, 2023.   Defendant asks the Court to release him because of the high risk that he may contract COVID-19 and develop severe illness.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).   Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."   18 U.S.C. § 3582(c).

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons."   18 U.S.C. § 3582(c)(1)(A)(i).   Defendant seeks compassionate release because of hypertension and the COVID-19 pandemic.   For reasons stated below, the Court lacks jurisdiction because (1) defendant has not exhausted administrative remedies and (2) he has not established extraordinary and compelling reasons for his release.

## I.    Exhaustion Of Administrative Remedies

The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."   18 U.S.C. § 3582(c)(1)(A).   As to the second

alternative, a "lapse" refers to the failure of the warden to respond to defendant's request.   See United States v. Abdeljawad, No. 15-CR-3394 WJ, 2020 WL 4016051, at *2 (D.N.M. July 16, 2020) (in context, "lapse of 30 days" refers to complete absence of response during that period); United States v. Saenz, No. 97CR2106-JLS, 2020 WL 2767558, at *2 (S.D. Cal. May 28, 2020) (no "lapse" occurred because warden acted on defendant's request); United States v. Miller, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) ("lapse" means warden must fail to act on request for period of 30 days); see also lapse, Black's Law Dictionary 885 (7th ed. 1999) (lapse is "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred").   In other words, if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court.   See United States v. Valenzuela, No. 15-CR-01460-WJ, 2020 WL 5439803, at *2 (D.N.M. Sept. 10, 2020) (court lacks jurisdiction until inmate appeals warden denial through administrative appeal process and receives final agency determination); United States v. Van Sickle, No. CR18-0250JLR, 2020 WL 3962225, at *3 (W.D. Wash. July 13, 2020) (despite urgency created by COVID-19, defendant must exhaust administrative remedies within BOP before filing motion in court).   But see United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020) (statute allows defendant to file motion 30 days "after the warden receives his request"); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

The administrative exhaustion requirement in Section 3582(c)(1)(A) is jurisdictional. United States v. Scott, No. 16-10003-02-EFM, 2020 WL 5513616, at *1 (D. Kan. Sept. 14, 2020);

-4-

see United States v. Read-Forbes, No. 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (analyzing "text, context, and relevant historical treatment" of Section 3582(c)) (quoting Musacchio v. United States, 136 S. Ct. 709, 717 (2016)).   Defendant alleges that he has satisfied the exhaustion prerequisite because the warden denied his written request for compassionate release.   The record reflects that defendant submitted a request on June 5, 2020, which the warden denied on June 19, 2020.   The warden's denial advised defendant that he had the right to file an administrative appeal, but he did not do so.   Instead, on July 20, 2020, defendant filed a motion for compassionate release.   Because defendant did not appeal the warden's denial of his request, he has not fully exhausted all administrative appeal rights.   Accordingly, the Court lacks jurisdiction to consider his motion for compassionate release.

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.   See Read-Forbes, 2020 WL 1888856, at *4.   In contrast with judicially created exhaustion requirements, the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.   Malouf v. SEC, 933 F.3d 1248, 1256 (10th Cir. 2019), cert. denied, 2020 WL 1124531 (U.S. Mar. 9, 2020); see Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (exhaustion statutes like Prison Litigation Reform Act of 1995 establish mandatory exhaustion regimes, foreclosing judicial discretion).   The COVID-19 pandemic is no exception.   See Alam, 960 F.3d at 831, 833–36 (enforcing mandatory exhaustion requirement despite seriousness of COVID-19 and its spread in prisons); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (despite COVID-19 pandemic, failure to exhaust presents "glaring roadblock" foreclosing

compassionate release at this point).

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound policy reasons support the requirement that defendant must first present to the BOP his request for a reduced sentence.   The exhaustion requirement helps prevent premature claims and ensures that the agency which possesses the most expertise is given the first shot at resolving defendant's request.   See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011); see also Raia, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.").   Because defendant is in BOP custody, the BOP is in a better position to initially determine his medical needs, his specific risk of COVID-19 and the risk to inmates generally at USP Thomson, the risk to the public if he is released and whether his release plan is adequate. See United States v. Epstein, No. CR 14-287-FLW, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); see also Alam, 960 F.3d at 835 (preventing prisoners seeking relief because of COVID-19 from charging straight to federal court helps prison administrators prioritize most urgent claims and ensure that they can investigate gravity of conditions supporting compassionate release and likelihood that conditions will persist); United States v. Dickson, No. 19-CR-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (BOP better positioned to understand inmate health and circumstances relative to entire prison population and identify extraordinary and compelling reasons for release).   Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2).

-6-

## II.    Extraordinary And Compelling Reasons For Release

Even if defendant had exhausted administrative remedies, he has not shown "extraordinary and compelling reasons" for release.   Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).   Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."   United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories.   United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).[2]  In addition, the

---

[2]   Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)   Medical Condition of the Defendant.—
(i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).   A specific prognosis of life

(continued . . .)

policy statement requires that before granting relief, the Court must find that defendant "is not a danger to the safety of any other person or to the community."   U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).   In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release.   The

---

2(. . . continued)
expectancy (i.e., a probability of death within a specific time period) is not required.   Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is—
    (I)   suffering from a serious physical or medical condition,
    (II)   suffering from a serious functional or cognitive impairment, or
    (III)   experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.
    (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1 (Nov. 2018).

Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release.   See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)).   Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request.   See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

Here, defendant seeks compassionate release based on hypertension and the risk that he may contract COVID-19.   The government concedes that a medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and compelling reason for release.   See Response To Defendant's Motion For Compassionate Release (Doc. #336) filed August 26, 2020 at 5.   Under subsection (A) of the Section 1B1.13 commentary, defendant must show that he has a chronic condition that substantially diminishes his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."   Id. (quoting U.S.S.G. § 1B1.13, cmt. n.1(A)).   Here, subsection (A) does not apply because unless and until defendant contracts COVID-19, his hypertension does not limit his ability to provide self-care within the prison environment. Subsections (B) and (C) also do not apply.[3]   Accordingly, for defendant to establish extraordinary

---

[3]   Subsection (B) does not apply because defendant is 39 years old.   See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age). Subsection (C) does not apply because defendant seeks relief based on his own circumstances, not family circumstances.   See U.S.S.G. § 1B1.13, cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver).

and compelling reasons for release based on his medical condition and the risk of contracting COVID-19, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(D).   To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).   Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference."   Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP."   U.S.S.G. § 1B1.13, cmt. n.1(D).   In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the BOP, courts now can make such a determination.   See Saldana, 807 F. App'x at 819–20.

In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have

considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range.  See id.  In rejecting defendant's argument, the Tenth Circuit noted first that the district court considered defendant's post-conviction rehabilitation as a factor, but it properly concluded, consistent with 28 U.S.C. § 994, that rehabilitation alone is not an extraordinary and compelling reason for relief.  Id. at 820.  Next, the Tenth Circuit held that the district court lacked jurisdiction to reduce defendant's sentence based on post-sentencing developments in case law because the Section 1B1.13 commentary and BOP Program Statement 5050.50 did not identify a change in law as an "extraordinary and compelling reason" for relief.  Id.[4]  Notably, in affirming the district court's decision to deny defendant's request for a reduced sentence under the catchall provision of subsection (D), the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons under the catchall provision.  The Court therefore concludes that on a defense motion, it may— independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary.  U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release); see also 28 U.S.C. § 994(t)

---

[4]        After the Court has determined that a defendant has shown an extraordinary and compelling reason for a reduced sentence, it may consider post-sentencing developments in case law as part of the balancing of the sentencing factors under 18 U.S.C. § 3553(a).  See United States v. Walker, No. 06-CR-00320-LTB, 2020 WL 5100250, at *4 (D. Colo. Aug. 21, 2020).

(Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples").   But cf. United States v. Garcia, No. 4:05-cr-40098, 2020 WL 2039227, at *5 (C.D. Ill. Apr. 28, 2020) (First Step Act did not override policy statement because definition of "extraordinary and compelling reasons" does not directly conflict with text of First Step Act).

As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence.  See Saldana, 807 F. App'x at 819.   The BOP program statement does not mention a defendant's medical condition, but it arguably is encompassed in his "personal history."  Id. (citing Program Statement 5050.50).   In any event, the factors are nonexclusive and the catchall provision of subsection (D) encompasses those cases that do not satisfy the specific medical conditions listed in subsection (A) of the commentary.   The Court therefore can consider whether defendant's medical condition—combined with the risk of contracting COVID-19 at USP Thomson—constitute "other" extraordinary and compelling reasons for a reduced sentence.   See United States v. Campanella, No. 18-CR-00328-PAB-12, 2020 WL 4754041, at *2 (D. Colo. Aug. 17, 2020) (because list of factors in Program Statement 5050.50 is "nonexclusive," court will consider whether defendant's medical condition is extraordinary and compelling reason for sentence reduction); United States v. Brown, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6 (S.D. Iowa Apr. 29, 2020) (in addressing defense motion for compassionate release, district court can consider anything, or at least anything BOP could have considered); see also Alam, 960 F.3d 831, 835 (6th Cir. 2020) (compassionate release provision gives inmates option to seek release on health grounds).

Here, defendant seeks release because of hypertension and the conditions at USP Thomson. In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."   United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting *extraordinary*, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence."   Id. (quoting *compelling*, Webster's Third International Dictionary, Unabridged (2020)).   Defendant's hypertension and the present conditions at USP Thomson do not compel a finding that release is warranted.   Defendant asserts that USP Thomson does not provide adequate medical care or access to doctors, but BOP records reflect that various health care professionals including medical doctors have treated him during the COVID-19 pandemic.   See, e.g., BOP Medical Records (Doc. #336-1) at 1–3 (doctor visit July 13, 2020); id. at 4–6 (nurse visit June 14, 2020); id. at 12–14 (physician assistant visit May 27, 2020); id. at 18–19 (doctor visit March 3, 2020).   USP Thomson had a COVID-19 outbreak in August, but only four inmates presently have tested positive and have not recovered.   Defendant has not shown that compared to home confinement or other community placement, he faces a heightened or imminent risk of exposure to COVID-19 at USP Thomson.   See United States v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).   Likewise, defendant has not established that any of the nonexclusive factors in BOP Program Statement 5050.50 compel his release.   COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.   Even so, the risk that COVID-19 may re-emerge at USP Thomson cannot "justify compassionate release, especially considering

-13-

BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."   Raia, 954 F.3d at 597.

Even if defendant's medical condition, the conditions at USP Thomson and the COVID-19 pandemic were considered "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553.   A sentence below 144 months is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.   In particular, a jury found defendant guilty of eight counts of forcible assault.   As part of the offense conduct, defendant spit, threw urine and feces at BOP officers and caused physical injury to two of them.   Presentence Investigation Report (Doc. #129) filed May 8, 2013, ¶¶ 11–12, 17.   Defendant verbally threatened BOP officers including threats on their lives and the lives of their family members.   Id., ¶¶ 9–17.   In addition, defendant has an "incredibly extensive criminal history" including a pattern of violent, disruptive and assaultive behavior.   Transcript Of Sentencing (Doc. #191) filed November 14, 2013 at 256, 259.   The BOP summary report of defendant's disciplinary record, which encompasses 36 pages, shows that his violent and threatening conduct has continued.   See Inmate Discipline Data (Doc. #336-2) filed August 26, 2020.   Within the past two years alone, BOP has disciplined him for numerous instances including attempted assault, assault, fighting, possessing a weapon and threatening others with bodily harm.   Defendant has demonstrated virtually no progress toward rehabilitation, and he remains a danger to the community.   On balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant's medical condition, the conditions at USP Thomson and the ongoing COVID-19 pandemic are not "extraordinary and compelling" reasons that warrant his release

under Section 3582(c)(1)(A).   Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction.   See Saldana, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

       **IT IS THEREFORE ORDERED** that defendant's Motion For Compassionate Release (Doc. #331) filed July 20, 2020 is **DISMISSED**.

       Dated this 25th day of September, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge